632 F.Supp. 1095 (1986)
Kelly Renee VANOVER and Tara Dale Vanover, by Next Friend and Natural Mother, Kelly Renee Vanover, Plaintiffs,
v.
FORD MOTOR COMPANY, a Corporation, Defendant.
No. S85-138C(D).
United States District Court, E.D. Missouri, Southeastern Division.
March 28, 1986.
Donald Rhodes, Bloomfield, Mo., for plaintiffs.
Steve Sander, Shepherd, Sandberg & Phoenix, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court upon defendant's motion for partial summary judgment.
On October 17, 1982, while driving on U.S. Highway 61, Edward Dale Vanover violently collided head-on with an Oldsmobile Cutlass driven by Cynthia Jo Gates. Both drivers died as a result of injuries sustained in the accident.
Mr. Vanover's wife and child have sued Ford, alleging that the 1979 Zephyr that he was driving was defective because, among other things, it did not contain an airbag system. (Complaint, Counts I and II).
Defendant asserts that plaintiffs' airbag theory is preempted by federal law and, thus, summary judgment as to this claim should be granted in defendant's favor. For reasons set forth below, the Court finds that Congress has preempted the field in this matter and that even if Congress had not preempted the field, the subject vehicle was not unreasonably dangerous so as to allow recovery under Missouri's Second Collision Doctrine.
It is the plaintiffs' general contention that the subject vehicle was in a defective and unreasonably dangerous condition because it was incapable of providing reasonable protection to occupants during crashes. In short, plaintiffs allege that the vehicle was not "crashworthy" because it lacked adequate passive restraint systems. An automotive safety device is characterized as "passive" rather than "active" when it requires no independent action by occupants to render it effective. Occupants who are, for example, tired, distracted, lazy, absent minded or even inebriated, can remain "passive" and will have protection from foreseeable crashes as a result of the following components which are encompassed within the definition of "passive" restraint system: Padded and contoured interior surfaces windshield, roof, seats, head restraints, arm rests, energy absorbing *1096 steering column, etc. On the other hand, "active" restraint systems include door locks and manually fastened seat belts.
Plaintiffs maintain that an especially effective component of passive restraint systems, if not the most effective component, which can be installed on automobiles is an "airbag" or "air cushion". An airbag remains concealed within the dashboard and steering column of an automobile until activated by impact, when it inflates to cushion vehicle occupants from the forces of the collision. The plaintiffs contend that airbags provide superior protection in front or front angle crashes, such as the collision in the instant case.
For some fifteen years the United States Government has directly and expressly regulated the use of airbags in automobiles in this country. In 1966 Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), directing the Secretary of Transportation to prescribe Federal Motor Vehicle Safety Standards that "meet the need for motor vehicle safety." 15 U.S.C. § 1392. Congress defined "motor vehicle safety" as the degree of protection needed to protect the public "against unreasonable risk of accidents occurring as a result of the design, construction, or performance of motor vehicles and ... unreasonable risk of death or injury to persons in the event accidents do occur." 15 U.S.C. § 1391(1). In promulgating any such standard, the Secretary must consider whether it is "reasonable, practicable and appropriate." 15 U.S.C. § 1392(f).
In 1974 Congress responded to Transportation Department proposals and expressly prohibited the Department from requiring airbags or any other non-belt safety system unless the Secretary first (a) followed special hearing procedures and (b) provided both houses of Congress an opportunity to review the proposed requirement. 15 U.S.C. § 1410(b)-(d). Further, Congress expressly preempted attempts by states to establish safety standards different from a Federal Motor Vehicle Safety Standard governing the same vehicle feature. 15 U.S.C. § 1392(d). Congress, thus, intended that there should be but one set of national standards to assure the safety of motor vehicles. See S.Rep. No. 1301, 89th Cong., 2nd Sess. (1966), U.S.Code Cong. & Admin. News 1966, p. 2709.
If this or any other Court should hold an automobile manufacturer liable in tort for failing to install an airbag system, it would have the effect of requiring all manufacturers to install airbags or face the possibility of enormous liability in tort. The imposition of damages under state tort law has long been held to be a form of state regulation subject to the Supremacy Clause. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959):
[R]egulation can be as effectively exerted through an award of damages as through some form of prevention relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.
This type of ad hoc regulation is exactly what Congress sought to exclude by enacting the National Traffic and Motor Vehicle Safety Act of 1966. Moreover, courts have applied 15 U.S.C. § 1392(d) to preempt state motor vehicle safety standards whenever those standards were not identical to and applicable to the same aspect of performance as a Federal Motor Vehicle Safety Standard. See Vehicle Equipment Safety Commission v. National Highway Traffic Safety Administration, 611 F.2d 53, 55 (4th Cir.1979); Juvenile Products Manufacturers Assoc. v. Edmisten, 568 F.Supp. 714, 718 (E.D.N.C.1983).
Here, § 1392(d) on its face preempts plaintiffs' attempt to create an airbag requirement under state tort law. There is now, and there was when Ford manufactured the Vanover Zephyr, a Federal Motor Vehicle Safety standard directly and expressly *1097 governing the aspect of the automobile as to which plaintiffs seek to impose a state law standardnamely, airbags. Plaintiffs' purported state law standard, which would require the installation of airbags on penalty of enormous liability in tort, certainly would not be identical to the federal standard, which expressly authorizes manufacturers of automobiles to use any of several restraint systems, only one of which is airbags. Therefore, there is express preemption under § 1392(d).
Even if Congress had not preempted this area, defendant's motion would still be granted because the Vanover Zephyr could not be characterized as unreasonably dangerous under Missouri's Second Collision Doctrine. Plaintiffs' predicate their theory of recovery upon defendant's failure to provide an airbag which allegedly would have prevented the plaintiffs' decedent from coming in contact with the various parts of the interior of the automobile. In 1978, Missouri adopted the second collision doctrine which extends a manufacturer's scope of liability under the Restatement (Second) of Torts § 402A (1965) to situations where the design of its products has caused separate or enhanced injuries in the course of an initial accident brought about by an independent cause. The second collision doctrine differs from the typical strict liability case in that the defect would not have produced any injury in the absence of a co-defendant's independent act which sets the injury producing cycle into motion. The source of the original independent act is irrelevant so long as the plaintiff's particular use of the product is reasonably foreseeable. Polk v. Ford Motor Co., 529 F.2d 259, 266 (8th Cir. banc 1976); Cryts v. Ford Motor Co., 571 S.W.2d 683, 687 (Mo. App.1978).
In the instant case, the first collision was the contact between the Ford Zephyr driven by Mr. Vanover with the Oldsmobile Cutlass driven by Ms. Gates. The second collision for which plaintiffs seek damages from defendant was Mr. Vanover's contact with the various parts of the interior of his own car.
The landmark case that first announced the second collision doctrine was Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir.1968). That court stated, "[t]he sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or, as safe as is reasonably possible under the state of the art." Id. at 502. The Larsen court held that an automobile manufacturer is obligated "to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of collision." Id. The Larsen court further concluded that:
We perceive of no sound reason, either in logic or experience, nor any command and precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. Manufacturers are not insurors, but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel.
Id. at 503. Cited in Higgs v. General Motors, Civ. 3-84-431 (E.D.Tenn.); Thomas v. Subaru of America, 3-84-787 (E.D. Tenn.).
In Thomas and Higgs, supra, the Honorable Judge James H. Jarvis of the Eastern District of Tennessee noted that the body of law in this area is divided into two areas. Second collision liability has been consistently recognized in cases involving an allegedly defective component which is itself the instrumentality causing the enhancement of injury. This line of cases is exemplified by Larsen, supra, (rear displacement of steering assembly). See also Roberts v. May, 41 Colo.App. 82, 583 P.2d 305 (1978) (dashboard); Huddell v. Levin, 537 F.2d 726 (3rd Cir.1976) (head restraint); Cryts v. Ford Motor Co., 571 S.W.2d 683 (Mo.App.1978) (arm rest).
Judge Jarvis points out that the second category of cases involve, as here, failure to equip the vehicle with a device which allegedly would have prevented enhancement of the injury. There is, however, no *1098 consensus among the courts on the development of the law in this area. For example, in some jurisdictions a failure to install a roll bar has been actionable. Turner v. General Motors Corporation, 514 S.W.2d 497 (Tex.App.1974). In other states, the absence of a roll bar has been held not to be a defect. Delvaux v. Ford Motor Company, 764 F.2d 469 (7th Cir.1985) (Wisconsin law); cf., Curtis v. General Motors Corporation, 649 F.2d 808 (10th Cir.1981) (Colorado law). Likewise, the absence of ROPS (roll over protective device) on heavy machinery has been the basis for liability in some states; see, Wagner v. International Harvester Company, 611 F.2d 224 (8th Cir. 1979) (Minnesota law), but not in others. See, e.g., Orfield v. International Harvester Company, 535 F.2d 959 (6th Cir.1976).
Judge Jarvis was not and neither is this Court aware of any reported case which holds that liability can be imposed upon a manufacturer for failing to equip a vehicle with a specific safety device (airbag), if that manufacturer did in fact provide a different device to serve the same end (three-point seatbelt).
To recover under the second collision doctrine, the plaintiff has the burden of proving that the product was defective in condition or design when it left the manufacturer. To establish that the product was defective, plaintiff must show that he was injured while using the product in its intended manner. Further, the plaintiff must prove that the product was unreasonably dangerous; i.e., the product must be dangerous to an extent beyond that which would be contemplated by the user with ordinary knowledge common to the community. Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362, 364 (Mo.1969); Cryts v. Ford Motor Co., 571 S.W.2d 683, 688 (Mo. App.1978).
The above language makes it clear that the term "unreasonably dangerous" focuses on what is contemplated by the ordinary consumer. In this case, the plaintiffs could not have expected that an airbag would pop-out of the dashboard. However, plaintiffs could expect that the vehicle would be equipped with some sort of restraint system which met government standards. See Higgs and Thomas, supra.
It is uncontroverted that Mr. Vanover's Ford Zephyr was equipped with a lap and shoulder harness restraint system. Moreover, the Department of Transportation has determined that an airbag system would not save any more lives than the belt system as used in those cars. 49 Fed.Reg. 28962, 28986 (July 17, 1984). Additionally, the use of airbags in smaller cars, such as the Ford Zephyr, in which the shorter space between the front of the car and the passenger, leaves less time for inflation of the bag. Id. at 28974, 29001.
There is no question of fact to be determined in this matter. It is only a question of law as to whether a car equipped with a lap belt and shoulder harness is unreasonably dangerous under Missouri's Second Collision Doctrine due to the manufacturer's failure to install an airbag restraint system. As such, this is an appropriate matter for summary judgment.
In light of the foregoing, the Court finds that the Vanovers' Ford Zephyr was not unreasonably dangerous and, thus, defendant's motion for partial summary judgment as to plaintiffs' airbag claims will be granted.