## Elaine B. COX

v.

## BALTIMORE COUNTY, et al.

### Civ. No. JFM–84–3062.

United States District Court, D. Maryland.

Sept. 26, 1986.

estate seek recovery for his wrongful death. They have sued Creasey, alleging that he drove his car negligently. They have sued the police officer who was chasing Creasey, alleging that he was negligent in his pursuit. They have sued the County and the police department, alleging that they negligently hired, trained and supervised the police officer. They have sued the owner of the stolen car, alleging that he was negligent in not locking the doors. Finally, they have sued Ford Motor Company, the manufacturer of the car, alleging that the Pinto was uncrashworthy.

Among the claims asserted by plaintiffs against Ford is that the Pinto was uncrashworthy because it did not contain air bags. Ford has moved for partial summary judgment as to that claim. The issue presented is whether a state law tort claim for uncrashworthiness based upon the lack of airbags is preempted by the National Traffic and Motor Vehicle Safety Act ("the Safety Act.").[1]

The Safety Act, enacted by Congress in 1966, directs the Secretary of Transportation to prescribe federal motor vehicle safety standards that "meet the need for motor vehicle safety." 15 U.S.C. Section 1392(a). In 1967 the Department of Transportation adopted Federal Motor Vehicle Safety Standard 208 requiring the installation of seat belts in automobiles. In 1970 this Safety Standard was amended to include a set of injury criteria that had to be met by some form of passive restraint system, including but not limited to airbags, for all occupant positions of all cars manufactured after July 1974. Over the last twelve years this Safety Standard has been amended and its implementation date postponed many times. The federal regulations and stat-

Christopher Mangold, Landover, Md., and Joseph H. Koonz, Jr., Washington, D.C., for plaintiff.

Malcolm F. Spicer, Jr., Towson, Md., Robert E. Powell and Richard Woods, Baltimore, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

On April 15, 1983, Robert M. Creasey, a criminal in high-speed flight from the police, smashed the stolen car he was driving into a 1975 Pinto and killed its driver, James R. Cox, Jr. Cox's wife, children and

---

**1.** After filing its initial motion raising the federal preemption claim, Ford filed a parallel summary judgment motion on the ground that as a matter of Maryland law the absence of airbags in a motor vehicle manufactured in 1975 does not render the vehicle uncrashworthy. There is much to be said for the position advanced by Ford that—in light of the history of, and the continuing debate over, airbags—the installation of airbags was not necessary "to afford reasonable safety" to the occupants of motor

vehicles. *See, e.g. Volkswagen of America, Inc. v. Young,* 272 Md. 201, 321 A.2d 737, 745 (1974); *Lahocki v. Contee Sand & Gravel Co.,* 41 Md. App. 579, 398 A.2d 490 (Ct.Spec.App.1979), *rev'd on other grounds,* 286 Md. 714, 410 A.2d 1039 (1980). However, this Court will decline to reach the state law issue since it involves matters of Maryland public policy which need not now be addressed since the federal preemption issue is controlling.

utes in effect in 1975, at the time that Mr. Cox's Pinto was manufactured by Ford, specifically authorized manufacturers to use three-point seat belts to meet the then existing injury criteria. Airbags were not decreed. In fact, the legislation in effect in 1975 prohibited the creation of a national airbag requirement without congressional clearance.[2]

The Safety Act contains a preemption provision which states as follows:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or items of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any state from enforcing any safety standard which is identical to a Federal safety standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard.

15 U.S.C. Section 1392(d). Ford contends that this provision, in conjunction with Safety Standard 208 and the provisions of 15 U.S.C. Section 1410b(b)–(d), prohibiting the Department of Transportation from requiring airbags without Congressional approval, constitutes an express preemption

of the states' ability to impose any sort of airbag requirement. Ford relies upon *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095 (E.D.Mo.1986), the only federal case which has addressed the issue.[3]

■ Plaintiffs contend that there is no express preemption because a jury hearing a tort case is not a "State or political subdivision of a State" and because a common law rule of tort law permitting recovery of money damages for the lack of airbags is not a "safety standard." These arguments are without merit. Obviously, a jury verdict must be based upon the law which governs it and the "establishment" of the "safety standard" is not the return of the verdict itself but the rendering of a judicial decision sustaining it. Incontrovertibly, the latter constitutes state action. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 265, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964); *Robinson v. Florida*, 378 U.S. 153, 156, 84 S.Ct. 1693, 1695, 12 L.Ed.2d 771 (1964). Likewise, there is nothing in the language of the Safety Act or in its legislative history to suggest that the term "safety standard" is intended to encompass only standards adopted by a regulatory body. A rule of the common law which permits the recovery of monetary damages for its breach self-evidently sets a standard and has been held to be a form of state regulation subject to the supremacy clause. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

■ Ford further argues that assuming that Section 1392(d) does not expressly preempt a state common law tort rule permitting recovery for the absence of airbags, the Safety Act impliedly preempts any such rule. The primary purpose of the Safety Act is to promote safety on the

---

2. The Federal Motor Vehicle Safety Standard that is in force today explicitly authorizes manufacturers to use traditional three-point seat belts, such as those in the 1975 Pinto, until the 1987 model year. That authorization will continue if by 1989 states with two thirds of the American population have enacted laws requiring vehicle occupants to use seat belts. 49 Fed. Reg. 28962, 29009–10 (July 17, 1984).

3. Plaintiffs cite three state cases in which Ford's contentions have been rejected. *See Munson v. Ford Motor Co.*, B–840, 570 (Tex.Dist.Ct. May 15, 1986), *Morgan v. Noble*, No. 84–CI–136 (Ky. Cir.Ct. Feb. 17, 1986), and *Lynch v. Mims*, No. GCG 85–0019 (Fla.Cir.Ct. Aug. 20, 1985). The summary orders in those cases contain no analysis of the pre-emption issue.

highways. However, the legislative history of the Act makes clear that a significant subsidiary purpose—itself intended to promote the primary goal—was to create uniform motor vehicle safety standards. *See* H.R.Rep. No. 1776, 89 Cong., 2d Sess. (1966); S.Rep. No. 1301, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin. News 1966, p. 2709. This purpose would be entirely frustrated by permitting individual states to adopt tort rules which would permit liability to be imposed upon manufacturers because of the absence of airbags. Plaintiffs' argument to the contrary is disingenuous. The law deals with reality, not mere abstraction, and a tort rule which would expose automobile manufacturers to monumental liability for not installing airbags in their products would necessarily have the effect of forcing the manufacturers to install airbags despite the express direction of Congress that no such requirement is to be imposed without express Congressional approval.

Plaintiffs point to the savings clause of 15 U.S.C. Section 1397(c) as expressly preserving from preemption all common law tort suits. That section provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." To read this clause as broadly as do plaintiffs would result in its frustrating, indeed defeating, the purpose of the Safety Act of establishing uniform standards. Reasonably read in the context of the statutory objectives, the clear meaning of the clause is that compliance with the federal standards does not protect an automobile manufacturer from liability for design or manufacturing defects in connection with matters not covered by the federal standards. *See Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

A separate order granting Ford's motion for partial summary judgment is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 26th day of September 1986

ORDERED that the motion for partial summary judgment filed by the Ford Motor Company is granted.