757 F.Supp. at 1338; *accord Bailey v. Metro Fed'l Savings & Loan Ass'n*, 642 F.Supp. 616, n. 5 (W.D.La.1986); *F.S.L.I.C. v. Lafayette Investment Properties, Inc.*, Civ. No. 87–1273, Slip Op. at 3–4 (E.D.La. Feb. 8, 1988) [available on WESTLAW, 1988 WL 10195] (unwritten side agreement to release borrower from obligations under note found unenforceable against F.S.L.I.C.); *Dill v. F.S.L.I.C.*, 678 F.Supp. 1404, 1405–06 (E.D.Ark.1988) (oral representations of bank officer that borrower would not be liable on note not enforceable against F.S.L.I.C.); *F.S.L.I.C. v. Lefeve*, 676 F.Supp. 764, 769–70 (S.D.Ms.1987).

Moreover, even if there does exist a letter from Armour confirming the agreement (*supra* at n 3), this would not alter the inevitable course of this action, since it is plainly a separate collateral agreement, *see Lupin v. F.S.L.I.C.*, Civ. No. 85–5898, Slip Op. at 2–7 (E.D.La. Mar. 31, 1987) [available on WESTLAW, 1987 WL 9106] (even though the agreement altering the terms of the note was in writing, agreement held not enforceable against the F.S.L.I.C. because it was separate from and collateral to the note).

The overwhelming authority is that the F.S.L.I.C., like the F.D.I.C., must be protected from hidden agreements that would defeat its interest in otherwise facially valid notes. Consequently, even if the Sandors were able to show that Chase and/or Sunrise knew of this claimed agreement between the Sandors and M.R.D.C., the agreement would not be enforceable against the F.S.L.I.C.

Summary judgment will be granted in favor of the F.S.L.I.C., without prejudice to the Sandor's third-party action for indemnification, *inter alia*.

Judgment will be entered, accordingly, upon the F.S.L.I.C.'s submission of a proposed judgment.

### ORDER

The premises considered, therefore, and the court being fully advised,

IT IS ORDERED that the motion of defendants/third-party plaintiffs, Gary and Maureen Sandor, for summary judgment, be, and the same is hereby DENIED; and it is

FURTHER ORDERED that the motion of plaintiff, the Federal Savings and Loan Insurance Corporation for summary judgment be, and the same is, hereby GRANTED.

**Larry GARRETT, individually and as father and next friend of James S. Garrett, a minor; and Paul R. Gaboury, individually and as Personal Representative of the Estate of Christopher B. Gaboury, deceased, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. No. JH–86–582.**

United States District Court,
D. Maryland.

Aug. 21, 1987.

Harold A. Sakayan, Gerald I. Holtz, and Margolis, Sakayan & Holtz, Washington, D.C., for plaintiffs.

Robert E. Powell, Clement D. Erhardt, III, and Smith, Somerville & Case, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JOSEPH C. HOWARD, District Judge.

Plaintiffs have brought this diversity action against defendant Ford for personal injury and wrongful death based upon negligence, breach of warranty and strict liability in tort.

On August 29, 1985, James S. Garrett and Christopher B. Gaboury were rear seat passengers in a 1985 Ford Escort. The car, driven by Christina Kisamore, collided head on with a tractor trailer truck. At the time of the collision, both Garrett and Gaboury were wearing the lap seat belts which came as standard equipment in the rear seat of the Escort.

Garrett and Gaboury each suffered severe abdominal injuries allegedly caused by the lap belts they were using at the time of the accident. Gaboury died approximately five hours after the accident and Garrett is paralyzed from the waist down.

Pending before the Court is defendant Ford's motion for judgment on the pleadings, or in the alternative, for summary judgment.

## I.

Ford's motion presents this Court with a problem of statutory construction involving the National Traffic and Motor Vehicle Safety Act of 1966 (the Act). Pub.L. No. 89–563, 80 Stat. 718 (now codified at 15 U.S.C. §§ 1381–1431). The Act stands as a comprehensive federal regulatory scheme contemplating detailed performance and safety standards for particular motor vehicle equipment. This legislation reflected a conviction to reduce traffic accidents and the deaths, injuries, and property damage which occur in such accidents. S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2709. Secondarily, the centralized, mass production, high volume character of the motor vehicle industry in the United States created the subsidiary purpose of establishing uniform national safety standards for motor vehicles and motor vehicle equipment. *Id.* at 2720.

The safety standard involved in this case is Congress' 1974 amendment to the Act which addresses regulatory standards for occupant restraint systems. That amendment provides that:

Except as otherwise provided in paragraph (3), no Federal motor vehicle safety standard respecting occupant restraint systems may—

(A) have the effect of requiring, or

(B) provide that a manufacturer is permitted to comply with such standard by means of,

an occupant restraint system other than a belt system.

15 U.S.C. § 1410b(b)(2).

An occupant restraint system is defined as a "system the principle purpose of which

is to assure that occupants of a motor vehicle remain in their seats in the event of a collision or rollover." 15 U.S.C. § 1410b(f)(3). More importantly, the term "belt system" is "an occupant restraint system consisting of integrated lap and shoulder belts for front outboard occupants and lap belts for other occupants." 15 U.S.C. § 1410b(f)(2).

Ford claims to have conformed with this safety standard in manufacturing the Escort, and contends that compliance with the federal standard preempts plaintiff's common law claims. Principally, defendants rely upon the supremacy clause contained in the Act which provides in part that:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard.

15 U.S.C. § 1392(d).

Plaintiffs, on the other hand, point the section of the Act which provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c).

## II.

Because Ford's preemption argument has convinced other District Courts, this Court will consider it in some detail.

Ford argues that preemption can occur in several ways.

> First, when enacting a federal statute, Congress may expressly state an intent to preempt state law. Second, even ab-

sent express preemptive language, Congress may otherwise indicate its intention to preempt state law by legislating so comprehensively that it has "left no room for the States to supplement federal law." Third, even absent an express or implied Congressional intent to preempt state law, state law will be preempted if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

(citations omitted). This Court finds none of the three preemption arguments to be persuasive.[1]

Ford's first argument in favor of express preemption is undercut by Congress' explicit provision allowing for common law liability in the savings clause. If Congress had intended to expressly preempt state law it presumably would have done so; it certainly would not have included the savings clause.

Next, it is clear that Congress did not intend to legislate comprehensively and occupy the entire field of motor vehicle safety as Ford's second argument suggests. Not only did Congress expressly permit identical regulation, 15 U.S.C. § 1392(d), but the states may also regulate areas not specifically addressed by Congress, *Chrysler Corp. v. Rhodes*, 416 F.2d 319, 323 (1st Cir.1969).

Ford's third preemption argument also fails. The expressly declared purpose of the Act was to reduce deaths and injuries resulting from traffic accidents, 15 U.S.C. § 1381. Ford contends that Congress' purpose for the Act was to create uniformity in safety standards. While this was one of Congress' incidental concerns, it was not the primary one. Congress intended the Act to save the lives of automobile passengers through safety standards; not the dollars of automobile manufacturers through uniformity.

Defendant also has an additional problem; namely, the plain language of the supremacy clause contained in the Act. The clause specifically prohibits a state or

---

**1.** This Court's rejection of Fords' preemption claims follows the similar reasoning contained in *Wood v. General Motors*, 673 F.Supp. 1108 (D.Mass.1987).

a political subdivision of a state from establishing standards which conflict with the federal standards. The language does not, on its face, indicate any Congressional intent to preempt a common law claim.

Such a construction, that a common law claim is not state regulation, according to Ford, "plainly contradicts Supreme Court opinions." Furthermore, "numerous Supreme Court opinions hold ... that state court decisions and jury awards are no less state action than acts of the state legislature or executive branches." Ford, however, in its briefs only supports its position by citing two cases.

The first case, *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), involves the National Labor Relations Act. The Supreme Court has articulated that different standards are involved to preserve the N.L.R.B.'s jurisdiction, *see Brown v. Hotel & Restaurant Employees & Bartenders International Union Local 54*, 468 U.S. 491, 502, 104 S.Ct. 3179, 3185–86, 82 L.Ed.2d 373 (1984) (even when the state law regulates conduct only arguably protected by federal law, a *presumption of preemption applies* ). The second case is *Sears, Roebuck & Co., v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). *Sears*, however, dealt with the preemption of an Illinois unfair competition law which directly conflicted with federal patent law. The present case involves the preemption of a common law tort claim. *Id.* at 225, 84 S.Ct. at 784. It is undisputed that the Act's supremacy clause would preempt a state from enforcing laws which are not consistent with those contained in the Act.

Finally, Ford contends that three very recent cases control the disposition of the motion.

This Court disagrees with the reasoning in the first case cited by Ford, *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095 (E.D.Mo. 1986). *Vanover* relies on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), to establish the proposition that a common law claim can be preempted by the supremacy clause of the Act, 632 F.Supp. at 1096. *Garmon* involved a presumption of preemption which does not occur in the present case. In a case involving the N.L.R.B., like *Garmon*, even when the state law regulates conduct only arguably protected by federal law, a presumption of preemption applies. *Brown v. Hotel & Restaurant Employees & Bartenders International Union Local 54*, 468 U.S. at 502, 104 S.Ct. at 3185–86. Without first establishing this crucial proposition, a conclusion of preemption cannot be reached.

Next, Ford cites *Cox v. Baltimore County*, 646 F.Supp. 761 (D.Md.1986). Judge Motz held that "there is nothing in the language of the Safety Act or its legislative history to suggest that the term 'safety standard' is intended to encompass only standards adopted by a regulatory body." *Id.* at 763. Judge Motz inferred from this lack of language that a common law claim can be a regulatory standard and therefore preempted. Preemption, however, cannot be based on the lack of language. This inference is contrary to the savings clause which explicitly preserves all common law claims.

The Court continued that a common law claim which permits the recovery of damages for its breach sets a standard of regulation, 646 F.Supp. at 763. To support this proposition, Judge Motz cited *San Diego Building Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). As previously discussed, *Garmon* involved the National Labor Relations Board, and the Supreme Court has held that a different, higher standard is involved which includes a presumption of preemption. The case at hand is controlled by just the opposite presumption—against preemption—that "Congress did not intend to displace State law", *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981).

In addition, the Court in *Cox* found a "significant subsidiary purpose [of the Act] ... to create uniform motor vehicle standards", 646 F.Supp. at 764. In order to avoid a conflict with this subsidiary purpose, the Court concluded that a common law claim must be preempted. As previously noted, uniformity was only a second-

ary purpose to the primary goal of safety. Congress was concerned with safety; not the automobile industry's concern with uniformity.

*Doty v. McMahon*, No. 85–3591 (D.D.C. Feb. 4, 1987) [available on WESTLAW, 1987 WL 31143] is the third case Ford cites to support its position. The Court in *Doty* based it's decision of preemption on the fact that Congress had legislated comprehensively in the area of motor vehicle safety and there was no room for the states to supplement the legislation. *Id.* at 5. This Court disagrees with the reasoning in *Doty.* Congress has permitted identical regulation, 15 U.S.C. § 1392(d), as well as allowing states to regulate areas not specifically addressed by Congress, *Chrysler Corp. v. Rhodes*, 416 F.2d 319, 323 (1st Cir.1969).

The Court in *Doty* continued that "Congress has expressed an intent to prohibit any state motor vehicle safety standard that is not identical to the Federal Motor Vehicle Safety Standard governing the same vehicle feature", No. 85–3591 slip op. at 6. To support this proposition, the Court relied on *Cox* and *Vanover*, the reasoning of which has been already discussed above.

What Ford is left with, therefore, is the plain language of the Act.

### III.

The main purpose of the Act is expressed in 15 U.S.C. § 1381, which states:

Congressional declaration of purpose

Congress hereby declares that the purpose of this chapter is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents. Therefore, Congress determines that it is necessary to establish motor vehicle safety standards for motor vehicles and equipment in interstate commerce.

The motor vehicle safety standards which are established apply to:

"any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads, and highway, except any vehicle operated exclusively on a rail or rails."

15 U.S.C. § 1391(3). Because of the general nature of these standards, which apply to all automobiles, Congress considered the safety standards only to be a *"minimum standard* for motor vehicle performance or motor vehicle equipment performance ..." 15 U.S.C. § 1391(2) (emphasis added).

The preemption clause upon which Ford relies was intended to prevent the states from legislating other minimum safety standards for manufacture. S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News at 2709. Or, on the other hand, to prevent the State legislation of higher standards. *Id.* the statute removes authority to establish, or continue in effect a safety standard which is not identical to the federal standard. 15 U.S.C. § 1392(d).

Because the safety standards were only intended to be bare minimum federal standards, Congress had no intention to preempt common law liability when a manufacturer does not exercise the proper standard of care. To this end it enacted the savings clause which allows for a tort claim even if the minimal standards are met. The minimum standards were drafted to apply to all automobiles, so the requirements are necessarily general. Therefore, nothing in the statute should be construed to preempt a jury from returning a verdict that a manufacturer was negligent in regard to a particular element of a particular car. "Thus, common-law courts of the states, may hold that the safety performance requirements of a Federal standard are so 'minimum' that, under the particular circumstances of the case, the manufacturer's failure to exceed it imposes liability", H. Heffron, R. Medalie, S. Kurzman & M. Pearlman, *Federal Consumer Safety Legislation*, lx at 23 (1970).[2]

---

**2.** This is a special report prepared for the National Commission on Product Safety which studied the scope and adequacy of several safety statutes, including the National Motor Vehicle Safety Act.

This is not to say that compliance is entirely irrelevant. Compliance with the Act may be admissible on the issue of care, but it does not create an absolute defense or require that a jury find a defendant's conduct reasonable. *Dorsey v. Honda Motor Car,* 655 F.2d 650, 656 (5th Cir.1981), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). The case at hand is such a case in which Ford's failure to exceed the legislature's minimal safety requirements may impose liability.

This decision is also supported by the general development of products liability law. Indeed, in *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968) a seminal automobile products liability case, the Court discussed some of the concerns behind allowing common law claims. The Court held it was apparent that:

> the National Traffic Safety Act is intended to be supplementary of and in addition to the common law of negligence and product liability. The common law is not sterile or rigid and serves the best interest of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time. The common law standard of a duty to use reasonable care in light of all the circumstances can at least serve the needs of our society until the legislature imposes higher standards or the courts expand the doctrine of strict liability for tort. The Act is a salutary step in this direction and not an exemption from common law liability.

*Id.* at 506.

This Court holds that the most reasonable way to reconcile the language of the National Motor Vehicle Traffic Safety Act does not preempt plaintiffs' common law claims. Therefore, there still remains a triable issue of material fact.

Accordingly, it is this 21st day of August, 1987, by the United States District Court for the District of Maryland,

ORDERED:

1) that the motion for judgment on the pleadings or for partial summary judgment submitted on behalf of defendant, Ford, BE, and the same hereby IS, DENIED; and

2) that the Clerk mail copies of this Memorandum and Order to the counsel of record.