**John E. VERNA, an Incompetent, by his Father and Guardian, George J. VERNA, and John E. Verna, in his own right, and Joyce Verna, Parent of John E. Verna**

v.

**U.S. SUZUKI MOTOR CORPORATION and Simpson Marine Safety Equipment, Inc., Debtor in Possession d/b/a Simpson Sports.**

Civ. A. No. 88–0736.

United States District Court,
E.D. Pennsylvania.

May 18, 1989.

**824**

Elias Landau and William G. Blasdel, Jr., Philadelphia, Pa., for plaintiffs.

Eric A. Weiss, Philadelphia, Pa., for U.S. Suzuki Motor Corp.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated herein, defendants' motion will be granted.

**1.** Plaintiffs also originally named Simpson Marine Safety Equipment, Inc., d/b/a Simpson Sports, as defendant in this case. However, the complaint was withdrawn pursuant to plaintiffs' Pretrial Memorandum dated October 11, 1988. All references to defendant are therefore limited to U.S. Suzuki Motor Corporation.

## I. FACTS

On August 23, 1985, at or about 6:15 P.M., John Verna was operating his 1986 Suzuki Intruder motorcycle in the right-hand southbound lane of Sproul Road in Marple Township, Pennsylvania, when it collided with a 1985 Chevrolet Cavalier station wagon, driven by Mary C. Lawrence. At the time of the accident, Ms. Lawrence was in the process of making a left-hand turn onto westbound Paxon Hollow Road from the left-turning lane of northbound Sproul Road. The collision occurred at the intersection of Sproul and Paxon Hollow Roads while both parties were apparently proceeding through a yellow traffic signal. *See* Deposition of Linda Gillin, at 13, lines 3–24, Exhibit K to Defendants' Motion for Summary Judgment. John Verna was thrown from his motorcycle upon impact and sustained permanent brain damage, rendering him an incompetent.

On August 24, 1987, George Verna, as representative of John Verna, both citizens of the Commonwealth of Pennsylvania, filed suit against U.S. Suzuki Motor Corporation ("U.S. Suzuki"), a California corporation, in the Court of Common Pleas, Philadelphia County, Pennsylvania.[1] U.S. Suzuki was the American distributor of Suzuki motorcycles for Suzuki Motor Company, Ltd.,[2] a Japanese corporation, and shipped the 1986 Intruder to Cycle City II, where it was purchased by John Verna on May 14, 1985. The complaint alleges causes of action in negligence, breach of warranties, and strict products liability for failure to warn plaintiff of the inconspicuous nature of motorcycles during daylight hours and for failure to include a modulating headlamp as part of the motorcycle's safety features, thereby making the motorcycle defective and unreasonably dangerous. On February 1, 1988, the case was removed to this court based on diversity of citizenship.

**2.** On April 1, 1988, U.S. Suzuki Motor Corporation merged into American Suzuki Motor Corporation, also incorporated in California.

Defendants file this motion for summary judgment claiming that federal regulations requiring motorcycles to be equipped with "steady-burning" headlamps made it illegal for defendants to sell a motorcycle with a modulating headlamp device. 49 C.F.R. § 571108. Defendants further allege that any state laws to the contrary are preempted by these federal regulations. Finally, defendants deny any duty inuring to the distributor of a motorcycle to warn its operator of the dangers inherent in its operation.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The function of a motion for summary judgment is to avoid a useless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987) (*en banc*), *cert. denied,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed. 2d 815 (1988); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 568 (3d Cir.1986).

### B. Federal Motor Vehicle Safety Regulations

■ The National Highway Traffic Safety Administration ("NHTSA") is the agency created by Congress to implement the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 *et seq.,* (the "Act"), and is charged with promulgating safety regulations thereunder. 49 C.F.R. § 501. Pursuant to this authority, the NHTSA had issued Federal Motor Vehicle Safety Standard 108 ("FMVSS 108"), entitled "Lamps, Reflective Devices and Associated Equipment." As of the date of sale of the motorcycle in question, it stated:

> § 4.6 When activated:
>
> (a) turn signal lamps, hazard warning signal lamps, and school bus warning lamps shall flash; and
>
> (b) all other lamps shall be *steady burning,* except that means shall be provided to flash headlamps and side marker lamps for signaling purposes.

49 C.F.R. § 571.108 S 4.6 (1984) (emphasis added). As a "seller" under the Act,[3] U.S. Suzuki was obligated to adhere to NHTSA mandates, including FMVSS 108. Accordingly, the 1986 Suzuki Intruder was equipped with one white steady-burning headlamp centered between the handlebars, and two yellow running lights which were located on either side of the front headlamp. *See* Defendants' Brief in Support of Motion for Summary Judgment, at 3.

Defendants claim that a logical reading of FMVSS 108 clearly indicates that the federal government required U.S. Suzuki to sell motorcycles with steady-burning headlamps only and thus prohibited the use of a modulator. Defendants claim that this is supported by the fact that the NHTSA, on application by Harley–Davidson Motor Co., Inc., amended FMVSS 108, effective August 21, 1985, to include standards for headlight modulation. *See* 49 C.F.R. § 571.108 S 4.6 (10/1/85). Moreover, defendants contend that the scope of the Act, the detailed procedures of the NHTSA rulemaking process, and the precise language

---

**3.** 15 U.S.C. § 1397(a)(1) No person shall—

(a) manufacture for sale, sell, offer for sale or introduce or deliver for introduction in Interstate Commerce, or import into the United States, any motor vehicle or item of motor vehicle equipment manufactured on or after the date any applicable Federal Motor Vehicle Safety Standard takes effect under this subchapter unless it is in conformity with such standard except as provided in (b) of this section;

\* \* \* \* \* \*

of FMVSS 108, reflect a Congressional intent to preempt the field of motorcycle headlamp regulation, thus entitling defendants to judgment as a matter of law. Indeed, the Act expressly provides that:

> (d) Whenever a Federal Motor Vehicle Safety Standard established under this subchapter is in effect, no state or political subdivision of a state shall have any authority either to establish or to continue in effect with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect or performance of such vehicle or item of equipment which is not identical to the federal standard....

15 U.S.C.A. 1392(d). In further support of this contention, defendants draw the court's attention to the so-called "air bag" litigation in which numerous courts have applied § 1392(d) to relieve automobile manufacturers of liability for failure to install air bags, so long as the automobiles were equipped with another NHTSA-approved passive restraint system. *See, e.g., Kolbeck v. General Motors Corporation,* 702 F.Supp. 532, (E.D.Pa.1988); *Cox v. Baltimore County,* 646 F.Supp. 761 (D.Md. 1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095 (E.D.Mo.1986).

Plaintiffs' argument in opposition to defendants' motion for summary judgment focuses on the definition of "steady-burning" under FMVSS 108. Plaintiff argues that use of a modulator is not inconsistent with the requirement of FMVSS 108 that headlamps be steady-burning. Plaintiffs contend that modulation is a process which creates a steady-burning light that merely varies the brightness from a higher to a lesser intensity thereby causing the light to be more conspicuous. The headlamp is within the definition of steady-burning because, during the operation of the system, the filament is at all times luminescent and burning and continuously emitting light. From this proposition, plaintiffs conclude that since the NHTSA did not expressly regulate the field of motorcycle headlamp modulation prior to the August 1985 amendment of FMVSS 108, preemption could not apply and regulation of modulators was left to the individual states.

Plaintiffs concede that the Pennsylvania Code traces verbatim the language of FMVSS 108. 67 Pa.Code 153.4(f). However, plaintiffs argue that an analysis of the statute reveals that flashing, not modulating, was considered the opposite of steady-burning. The Pennsylvania Code defines "flashing" as "[a] cycle of activation and deactivation of a lamp by automatic means continuing until stopped either automatically or manually." 67 Pa.Code 153.3. As argued above, plaintiffs define modulating in terms of variable intensity or pulsation. Therefore "steady-burning" would necessarily include pulsating and non-pulsating lights which were not produced by a "cycle of activation and deactivation." Finally, plaintiffs point to 67 Pa. Code 175.146 in support of the contention that Pennsylvania law permitted the use of modulating devices on motorcycle headlamps. The statute states that "[a]pproved SAE [Society of Automotive Engineers] modulating headlights are legal." Although the SAE, in fact, has never approved standards for a headlamp modulating system, plaintiffs argue that their proposed modulator was designed to use an SAE-approved headlamp; the result being an approved SAE headlamp that was modulating.

Plaintiffs' syllogistic and syntactical arguments are ingenious, but unfortunately suffer from the logical fallacy of a false premise. First, plaintiffs' narrow interpretation of the term "steady-burning" under FMVSS 108 is belied by both a plain-reading of the statute and its subsequent history. On September 23, 1982, NHTSA published a Notice of Proposed Rule Making which stated that:

> The purpose of this notice is to propose an amendment to Safety Standard No. 108 that would allow installation of a modulating headlamp on motorcycles. Such a headlamp, *whose use is currently not allowed,* could improve conspicuity of a motorcycle and its operator during daylight.

47 Fed.Reg. 42009 (1982) (emphasis added). This position was reaffirmed by the NHTSA at the time of the 1985 amendment

to FMVSS 108 S 4.6. In its commentary on the amendment, the NHTSA stated:

> This notice amends Safety Standard No. 108 to allow installation of modulating headlamps on motorcycles. Such a headlamp, *whose use is currently not allowed,* could improve conspicuity of a motorcycle and its operator during daylight.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> *Because the amendment relieves a restriction and does not impose a burden upon a party,* ... [the] amendment is effective 30 days after publication in the Federal Register.

50 Fed.Reg. 29676 (1985) (emphasis added).

Second, plaintiffs' preemption argument misinterprets the broad scope of NHTSA authority in regulating motor vehicle safety standards. *See Truck Safety Equipment Institute v. Kane,* 466 F.Supp. 1242, 1244–1245 (M.D.Pa.1979). Where federal legislation is "sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," then inconsistent state laws are preempted. *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (*quoting Rice v. Sante Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). This includes not only state statutes, but state common law causes of action which effectively undermine the ultimate goal or purpose of the federal regulatory scheme. *International Paper Co. v. Ouellette,* 479 U.S. 481, 494–497, 107 S.Ct. 805, 813–814, 93 L.Ed.2d 883 (1987). Courts have recognized this principle in the context of NHTSA regulation by holding that safety standards allowing manufacturers to install a three-point safety belt system *or* air bags preclude the states from maintaining causes of action which allege that automobiles without air bags are defective or uncrashworthy. *See Kolbeck, supra,* 702 F.Supp. 532; *Cox, supra,* 646 F.Supp. 761; *Vanover, supra,* 632 F.Supp. 1095. As explained by the court in *Wattel et v. Toyota Motor Corp.,* 676 F.Supp. 1039 (D.Mont.1987):

> A tort rule ... would necessarily have the effect of forcing the manufacturers to install air bags despite the express direction of Congress that no such requirement is to be imposed without express congressional approval.

*Id.* at 1041.

As exhibited by § 1392(d), the broad authority granted to the NHTSA and the detailed regulations under FMVSS 108 S 4.6, it is overwhelmingly clear that Congress and the NHTSA preempted the entire field of motorcycle headlamp regulation. Moreover, a plain reading of FMVSS 108 S 4.6 and an examination of the amendments and commentaries thereto, prove that, prior to August 1985, the NHTSA mandated that motorcycles be equipped with steady-burning headlights only. The court finds that modulators were inconsistent with this directive. Consequently, any state statute or common law cause of action allowing modulators are invalid under the Supremacy Clause. U.S. Const. Art. VI.

Plaintiffs argue that if the court should deem modulation to be other than steady-burning within the meaning of FMVSS 108 S 4.6(b), then the court should permit the jury to consider whether the modulating device in question created a "hazard warning signal lamp" within the meaning of FMVSS 108 S 4.6(a). For the reasons stated above, especially the NHTSA commentaries to the 1985 amendment to FMVSS 108 and the structure of the regulations, the court is convinced that headlight modulation was simply not permitted by NHTSA regulations prior to 1985 and any judicial construction to the contrary is against the clear intent of the statute. Consequently, summary judgment will be granted in favor of defendants on this count.

### C.  Duty to Warn

■ Plaintiffs also allege that defendant U.S. Suzuki had a duty to warn John Verna of the motorcycle's inconspicuous nature during daylight hours. Plaintiffs characterize this as a latent defect which was not open and obvious to plaintiffs upon examination. The Restatement (Second) of Torts § 388 describes this duty as follows:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Comment (k) to § 388 states that "[i]t is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose...." *See also Powell v. J.T. Posey Co.*, 766 F.2d 131, 134–135 (3d Cir.1985); *Brown v. Caterpillar Tractor Co.*, 741 F.2d 656 (3d Cir.1984); *Zimmerman v. Baker–Perkins, Inc.*, 707 F.Supp. 778 (E.D.Pa.1989); *Sherk v. Daisy–Heddon, A Div. of Victor Comptometer Corp.*, 498 Pa. 594, 450 A.2d 615 (1982).

In *Shaffer v. A.M.F., Inc.*, 842 F.2d 893 (6th Cir.1988), the court discussed the duty of a manufacturer or distributor of a motorcycle to warn a purchaser of the dangers inherent in a motorcycle approaching an intersection. The court stated:

Just as the common person knows to be careful of the blade of the knife or ax, the common motorcyclist knows to be cautious in using the motorcycle because of its dangers. A "casual looking over" of a motorcycle, let alone the experience of six years of riding, must reveal that a motorcycle offers no protection in an accident, that serious accidents can and do occur, and that there are risks of collisions with other vehicles.

842 F.2d at 897. *See also Kremann v. Faunteroy*, CCH Prod.Liab.Rept. ¶ 11, 850 (1988) (no duty to warn of increased dangers of motorcycle painted black and lacking crash bar).

Plaintiffs distinguish *Shaffer* on grounds that the defect in the Intruder was not open and obvious and that John Verna had possessed the motorcycle for only three months and was licensed to drive for only three years. Neither of these grounds is persuasive. John Verna had taken and passed all licensing requirements for operating a motorcycle in the Commonwealth of Pennsylvania. These represent the "Rules of the Road" governing a motorcycle's approach to an intersection while operating in the face of a yellow traffic signal. Having found that the Suzuki motorcycle complied with all mandatory safety regulations concerning motorcycle headlamps, it cannot be said that the steady-burning headlamp in question was a latent defect in the 1986 Suzuki Intruder. Plaintiffs are thus left with the proposition that the distributor of a motorcycle has a duty to warn the purchaser of the increased dangers of operating a motorcycle in an intersection during daylight hours. As to this proposition, the court finds the reasoning in *Shaffer* dispositive. This danger is open and obvious to any individual who has undergone the requisite training and testing to be licensed to operate a motorcycle in the Commonwealth of Pennsylvania. Since this duty to warn is not attributable to the manufacturer or distributor, defendants' motion for summary judgment will be granted. *Brown, supra*, 741 F.2d at 661.

Defendants also attack plaintiffs' duty to warn allegation on grounds of causation. As in any case bottomed on tort, the plaintiffs must prove that the distributor's failure to warn was both the cause-in-fact and proximate cause of plaintiff's injury. *See, e.g., Conti v. Ford Motor Co.*, 743 F.2d 195, 197–199 (3d Cir.1984); *Overpeck v. Chicago Pneumatic Tool Co.*, 634 F.Supp. 638, 640 (E.D.Pa.1986), *aff'd*, 823 F.2d 751 (3d Cir.1987); *Sherk, supra*, 498 Pa. 594, 600, 450 A.2d 615, 618. Defendants claim that since John Verna is unable to testify, plaintiffs cannot, as a matter of law, prove that Verna would have acted differently had he been warned that the motorcycle was inconspicuous to oncoming vehicles.

Although questions of causation are usually for the jury, "if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law." *Overpeck, supra,* 634 F.Supp. at 640. To meet its burden of proof, plaintiff's evidence "must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." *Conti, supra,* 743 F.2d at 198. In response, plaintiffs offer to furnish affidavits of John Verna's parents which state that he was safety conscious and that he purchased motorcycle helmets for both him and his passengers with the highest safety rating available. Plaintiffs' Brief, at 19. Assuming, without deciding, the admissibility of such testimony, the court does not believe that this evidence is sufficient to create a genuine issue of material fact as to whether a warning from the distributor would have prevented this tragic accident. There is no proof in the record that John Verna read or heeded other warnings pertaining to the operation of his motorcycle. Taken as a whole, the court does not believe that a jury could reasonably infer that a warning from the defendant-distributor stating that, during daylight hours, a motorcycle is somewhat inconspicuous to other oncoming vehicles would have prevented this accident. Consequently, summary judgment will be granted in favor of defendants.

## III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted, and plaintiffs' case will be dismissed.

An appropriate Order will be entered.