**Gustave E. SCHICK, Individually and as Executor of the Estate of Bernice M. Schick, Deceased, and Violet Rodenburg, Executrix of the Estate of Willis H. Rodenburg, Deceased,**

v.

**CHRYSLER CORPORATION and Ford Motor Company, Defendants.**

**Civ. No. 86–1061.**

United States District Court,
D. South Dakota, N.D.

Dec. 15, 1987.

John A. Harris, III, Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, Ohio, Randolph J. Seiler, Krause, Seiler & Cain, Mobridge, S.D., Chester Groseclose, Richardson, Groseclose, Kornmann & Wyly, Aberdeen, S.D., Douglas M. Deibert, Cadwell, Sanford & Deibert, Sioux Falls, S.D., for plaintiffs.

Kennith P. Gosch, Bantz, Gosch, Cremer, Petersen & Oliver, Aberdeen, S.D., for defendant Chrysler Corp.

Rory King, Siegel, Barnett & Schutz, Aberdeen, S.D., for defendant Ford Motor Co.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

This memorandum involves the preemptive scope of the Federal Motor Vehicle Safety Act, 15 U.S.C. § 1391 *et seq.* (Act). The question presented by the defendant Ford Motor Co.'s motion for partial summary judgment is whether the Act preempts a common law cause of action for negligence based on the failure of an automobile manufacturer to install an air bag passive restraint safety device in an automobile.

This case arose out of an automobile accident that occurred on November 3, 1983. The Plaintiff, Gustave Schick, was injured and his wife, Bernice M. Schick, was killed when the 1971 Mercury Monterey he was driving was hit by a 1983 Chrysler that had crossed over the center line.[1] The action is also brought by Violet Rodenberg, the executrix of the estate of Willis H. Rodenberg, the driver of the 1983 Chrysler. Rodenberg died allegedly as the result of his injuries from the accident.

Among Schick's claims for relief is the claim that the defendants, Ford Motor Co. (Ford) and Chrysler Corporation (Chrysler), failed to equip the vehicles involved in the accident with "proper and adequate safeguards and safety equipment." Complaint allegation 10c. In particular, the complaint alleges that Schick and his wife, the driver and passenger in the 1971 Monterey, and Willis H. Rodenburg, the driver of the 1983 Chrysler, would not have been injured or would have sustained less serious injuries if the vehicles they were traveling in had been equipped with "an air bag safety device or other passive restraint." Complaint allegations 18, 25, and 31. The parties do

---

1. The complaint alleges that the accident was the result of a broken rear axle on the 1983 Chrysler. The Court makes no findings at this time about the cause of the collision.

not dispute that the automobiles were not equipped with air bags.

Ford has moved this Court for partial summary judgment to dismiss the plaintiffs' air bag claims. Chrysler is in agreement with Ford's motion and has moved the Court to consolidate its consideration of this matter. The Court therefore will decide Ford's motion for partial summary judgment with reference to the law as it relates to both automobiles.

Ford argues its motion for partial summary judgment should be granted because the plaintiff's air bag claim is preempted by the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1391 *et seq.* (1982). Two theories are advanced to arrive at this result: the claim is expressly preempted by 15 U.S.C. § 1392(d), and the claim is impliedly preempted by Safety Standard 208 and 15 U.S.C. § 1410b.

Section 1392(d) provides:

Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d) (1982).

Ford contends that recovery by the plaintiffs in this action on their air bag claims would establish a common law rule or standard that would effectively require automobile manufacturers to install air bags. This in turn would be a form of state regulation of automobile safety on the "same aspect of performance" as the federal standards established by the Act and, thus, would be expressly preempted by the supremacy clause.

At least two federal district courts have held that air bag claims are expressly preempted by section 1392(d). *See Cox v. Baltimore Co.,* 646 F.Supp. 761, 763–64 (D.Md.1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095, 1096–97 (E.D.Mo.1986). These courts rely on the opinion of the United States Supreme Court in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), in their analysis of the preemption issue. *Cox, supra,* at 763; *Vanover, supra,* at 1096. In *Garmon,* the Court held that a state court is precluded from awarding damages in a labor dispute by the National Labor Relations Act. 359 U.S. at 247, 79 S.Ct. at 780. In reaching this result, the Court states:

The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary efforts to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.

*Id.*

In *Garmon,* the Court relied heavily on the legislative history of the NLRA which clearly indicates that national labor policy has been entrusted to the federal government. 359 U.S. at 242, 79 S.Ct. at 778.

In the present case, section 1392(d) does not expressly preempt the development of common-law rules on motor vehicle safety. *See Staggs v. Chrysler Corp.,* 678 F.Supp. 270, 272 (N.D.Ga.1987); *Baird v. General Motors Corp.,* 654 F.Supp. 28, 30 (N.D.Ohio 1986). Section 1392(d) is silent on this issue. *See Wood v. General Motors Corp.,* 673 F.Supp. 1108 (D.Mass.1987). Section 1397(c) of the Act, however, preserves common-law suits by providing: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c) (1982). The United States Court of Appeals for the Eighth Circuit has confirmed this interpretation of section 1397(c). *See Larsen v. General Motors Corp.,* 391 F.2d 495, 506 (8th Cir.1968) (alleged negligent design of steering assembly of automobile). The Eighth Circuit, in *Larsen v. General Motors Corp.,* states:

It is apparent that the National Traffic Safety Act is intended to be supplemen-

tary of and in addition to the common law of negligence and product liability. The common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time. The common law standard of a duty to use reasonable care in light of all the circumstances can at least serve the needs of our society until the legislature imposes higher standards or the courts expand the doctrine of strict liability for tort. The Act is a salutary step in this direction and not an exemption from common law liability.

*Id.; see also Dawson v. Chrysler Corp.,* 630 F.2d 950, 958 (3rd Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). The saving clause, however, does not address the question of nonconforming rules of common law, and, thus, interpretation of section 1397(c) is not dispositive of the pre-emption question.

Ford argues in the alternative that the plaintiffs' air bag claim is impliedly preempted by Safety Standard 208 and 15 U.S.C. § 1410b, providing a procedure to be followed in imposing occupant restraint systems. Ford's theory of implied preemption rests on the stated purpose of the Act. First and foremost, the Act was passed to "reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381 (1982); *see also Motor Vehicle Mfgs. Assoc. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 33–40, 103 S.Ct. 2856, 2861–65, 77 L.Ed.2d 443 (1983) (tracing the history of the Act and standard 208). To this end, the Secretary of Transportation promulgated safety standard 208. 463 U.S. at 33–34, 103 S.Ct. at 2861–62. The Department of Transportation sought a uniform and flexible approach to the development of effective life-saving equipment in automobiles. *See Murphy v. Nissan Motor Corp.,* 650 F.Supp. 922, 928 (E.D.N.Y.1987).

The version of safety standard 208 in effect for the 1971 Mercury Monterey simply required automobile manufacturers to install seat belts in automobiles. 463 U.S. at 34, 103 S.Ct. at 2862. The amended standard in effect when the 1983 Chrysler was manufactured required that the manufacturer choose from among three sets of safety requirements, which are substantially the same as those presently in effect. *See* 49 CFR § 571.208 (1986). These options are described as follows: frontal angular automatic protection, head-on automatic protection, or lap and shoulder belt protection. *Id.* Notably, only the first two options require some type of automatic protection system, allowing the occupant to remain passive, such as air bags.[2]

Ford argues that a court decision that would effectively mandate one form of system or subject automobile manufacturers to be rendered bankrupt from multiple suits would deprive them of the choice offered by the federal standard, would undermine the congressional interest in uniformity, and would be contrary to section 125 of the Act, requiring congressional approval before an air bag requirement may be imposed. At least two courts have held that air bag claims are impliedly preempted to avoid frustration of the purposes of the Act. *See Staggs v. Chrysler Corporation,* No. C 85–352 R, slip op. (N.D.Ga. Nov. 24, 1987); *Baird v. General Motors Corp.,* 654 F.Supp. 28, 31–32 (N.D.Ohio 1986).

A recent discussion of the preemption question is offered by *International Paper Co. v. Ouellette,* — U.S. ——, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). In *Ouellette,* the Supreme Court held that water pollution regulation is primarily a matter for the federal government and state actions from which a contrary rule of law might emerge are preempted by the Clean Water Act. 107 S.Ct. at 811–13 (1987). The *Ouellette* Court relies on the rule that state laws are preempted when they actual-

---

**2.** The Note to Standard 208 states:

The concept of an occupant protection system which requires 'no action by vehicle occupants,' as that term is used in Standard No. 208, is intended to designate a system which

will perform its protective restraining function after a normal process of ingress or egress without separate deliberate actions by the vehicle occupant to deploy the restraint system. 49 C.F.R. § 571.208, note (1986).

ly conflict with federal laws. *Id.* (citing *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978)). An actual conflict is apparent "when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hillsborough Co. v. Automated Medical Laboratories,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985)). In addition, the *Ouellette* Court, in interpreting the phrase, "stands as an obstacle," states: "A state law also is preempted if it interferes with the methods by which the federal statute was designed to reach this goal." 107 S.Ct. at 813 (citing *Michigan Canners & Freezers Assn. v. Agricultural Marketing & Bargaining Bd.,* 467 U.S. 461, 477, 104 S.Ct. 2518, 2527, 81 L.Ed.2d 399 (1984)). The Court then held that suits imposing incompatible common-law rules would be preempted by the federal act. 107 S.Ct. at 814 (holding that a state law nuisance claim would be compatible and not preempted).

Assuming that the plaintiffs were to prevail in their air bag claims, the common law of South Dakota would be modified to allow a claim for negligence based on an automobile manufacturer's failure to install air bags in its product or failure to choose the air bag option. While one federal district court has argued that an action for failure to install air bags is distinguishable from an action claiming that the product *is unsafe* for failure to install air bags, *see Murphy v. Nissan Motor Corp.,* 650 F.Supp. 922, 925 (E.D.N.Y.1987) (holding that air bag claims tending to show that a product is unsafe are not preempted), this Court finds that such a theoretical slight of hand ignores the practical effect of allowing air bag claims. A single recovery on an air bag claim would send a signal to all automobile manufacturers that they must install air bags to avoid potential liability. This in turn would render the methods chosen by the Secretary of Transportation for the imposition and development of occupant restraint systems moot. Moreover, in the case of the federal standard applicable to the 1971 automobile, the imposition of an air bag requirement where none previously existed would conflict with the effective dates for the implementation of standard 208 and the purpose of gradually phasing in passive or automatic restraint systems. Clearly, such a result "stands as an obstacle" to the methods chosen by the Secretary of Transportation to administer the Act, *Ouellette,* 107 S.Ct. at 813, and is incompatible with the federal regulations. 107 S.Ct. at 814.

A recent decision of the United States District Court for the District of Massachusetts, the appeal from which is now under advisement by the United States Court of Appeals for the First Circuit, has allowed an air bag claim based upon the "speculative nature of the regulatory impact of a potential award" and the "inconclusive purposes" of the Act. *Wood v. General Motors Corp.,* 673 F.Supp. 1108 (D.Mass. 1987), *appeal under advisement.* This Court disagrees with this view of the legislative history of the Act and finds the effects of air bag awards on the automobile industry far from speculative.

Thus, for all the reasons set forth above, this Court holds that the plaintiffs' air bag claims are preempted by the federal act and its implementing regulations. Accordingly, Ford's motion for partial summary judgment is granted. It is not within the province of this Court, unfortunately, to comment on the wisdom or effectiveness of regulatory standard 208.