Harold B. STAGGS, individually, Lou Rummage, individually; and Harold Staggs and Lou Rummage, Co-Administrators of the Estate of Margaret Staggs, Plaintiffs,

v.

CHRYSLER CORPORATION, Defendant.

Civ. A. No. 4:85–CV–352–RLV.

United States District Court, N.D. Georgia, Rome Division.

Nov. 24, 1987.

On Motion for Reconsideration Jan. 25, 1988.

Gerry Holmes, Mundy & Gammage, Cedartown, Ga., William W. Smith, Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, Ala., for plaintiffs.

Joseph Claude Freeman, Jr., Freeman & Hawkins, Atlanta, Ga., James A. Hourihan, Washington, D.C., for defendant.

## ORDER

VINING, District Judge.

The above-styled action, sounding in tort, is before the court on Chrysler Motor Corporation's (Chrysler's) motion for partial summary judgment and Harold Staggs' and Lou Rummage's motion for leave to amend their complaint.

On July 27, 1984, Margaret Staggs ("Mrs. Staggs") was riding in a 1984 Dodge Ram Charger driven by her sister, Lou Rummage ("Rummage"). The two women were in transit from Columbia, Tennessee, to Tallapoosa, Georgia. While passing through Cedartown, Georgia, the vehicle left the road, struck a curb and a mailbox, and ultimately collided with a telephone pole. As a result of the impact with the telephone pole, Mrs. Staggs was pinned on the floorboard of the vehicle, sustaining severe internal injuries. She died several hours later as a result of those injuries. Rummage also sustained some injuries from the collision.

There is uncontroverted evidence that Mrs. Staggs was not wearing her seatbelt at the time the vehicle collided with the telephone pole. It is averred that she was not wearing the seatbelt because she weighed too much to comfortably fit it around her.

Following the accident, Staggs and Rummage, individually and as co-administrators of Mrs. Staggs' estate, filed the instant action in this court. Staggs seeks to recov-

er under a theory of strict products liability for the injuries to and death of his mother and for the resulting damages incurred by him. Rummage seeks to recover under the same theory of strict liability, claiming entitlement to medical costs, lost wages, and a monetary award for pain and suffering. As co-administrators of Mrs. Staggs' estate, both Staggs and Rummage seek to recover for Mrs. Staggs' medical expenses, pain and suffering, and funeral expenses.

The plaintiffs claim that Chrysler is strictly liable for its failure to install passive restraints ("air bags"), for manufacturing an uncrashworthy vehicle, and for installing defective seats and seat tracks. Chrysler has moved for partial summary judgment, arguing that the plaintiffs' cause of action involving passive restraints is preempted by congressional legislation and administrative rulemaking.

In support of its motion for partial summary judgment, Chrysler relies primarily on section 103(d) of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381, *et seq.* ("Safety Act"). This section provides, in pertinent part:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard.

In opposition to Chrysler's motion, the plaintiffs argue that section 108(c) of the Safety Act indicates that Congress did not intend to preempt the area of passive restraints. That section reads as follows:

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

The plaintiffs argue that this section manifests a congressional intent that automobile manufacturers remain liable to consumers under traditional state common law liability theories. The plaintiffs further argue that section 1392(d) speaks only to the situation where a state legislature or other political subdivision of the state seeks to enact safety standards not identical to the federal standards. Because section 1392(d) does not deal with the issue of liability under state common law tort theories, the Safety Act cannot be read as preempting potential tort actions. The plaintiffs contend that there is no tension between section 1397(c) and section 1392(d).

Chrysler, on the other hand, contends that section 1392(d) must be read more expansively than the actual wording of the section itself. Chrysler argues that it is disingenuous to prohibit a state or one of its political subdivisions from enacting standards not identical to federal standards, yet, at the same time allow state common law to develop in such a way that de facto safety standards would become controlling within the industry. The underpinning of this argument is that a return of a large monetary damage award in a situation where a manufacturer failed to install air bags would, in a very realistic sense, force all manufacturers to install air bags to avoid potential liability. Such a damage award would, therefore, become the industry standard. Chrysler argues that allowing this eventuality to come about would effectively circumvent the congressional mandate now in place which allows manufacturers to choose among three restraint system options.

To date, the Supreme court has not addressed the issue of whether the congressional action in this area has preempted the field in such a way that common law tort actions, which might force manufacturers to adopt a safety standard not mandated by the Act, are precluded. No federal circuit court of appeals has addressed the precise issue now before the court. However, several federal district courts as well as state trial courts have considered the issue, and a good deal of scholarly literature has also been generated by this controversy. *See,*

*e.g.,* Wilton, Federalism Issues in "No Air Bag" Tort Claims: Preemption and Reciprocal Comity, 61 Notre Dame L.R. 1 (1985). Of the federal courts addressing this issue, most have determined that some type of preemption exists.

Several federal district courts have found that common law tort actions based on the absence of air bags are expressly preempted by the Safety Act. *Cox v. Baltimore County,* 646 F.Supp. 761 (D.Md.1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095 (E.D.Mo.1986); *Vasquez v. Ford Motor Co.,* No. CIV 86–0657 PHX WPC (D.Ariz. 6, 1986) [available on WESTLAW, 1986 WL 18671]. One federal district court has determined that while there is no express preemption in the Safety Act, common law tort actions which might affect standards promulgated under the Safety Act are impliedly preempted. *Baird v. General Motors Corp.,* 654 F.Supp. 28 (N.D.Ohio 1986).

Two other federal district courts have rejected the preemption theory in its entirety. *Murphy v. Nissan Motor Corp.,* 650 F.Supp. 922 (E.D.N.Y.1987); *Wood v. General Motors Corp.,* 673 F.Supp. 1108 (D.Mass. 1987). The court deems it unnecessary to evaluate in any detail the various state trial court decisions dealing with the preemption issue. Suffice it to say that no Georgia appellate court has yet considered this issue.

A fair reading of the statute itself leads the court to conclude that Congress did not expressly preempt all state common law tort actions dealing with automotive safety standards. By its terms, the Act simply requires that no state or political subdivision of a state enact or continue in effect any standards not consistent with federal standards.

However, while it is clear to this court that there is no *express* preemption, it is also equally clear that state common law tort principles may not be allowed to evolve in such a way as to force manufacturers to make decisions and choices which conflict with any congressional mandate. There can be no doubt that common law tort liability can serve to regulate conduct as effectively as legislative or administrative regulations. *San Diego Buildling Trades Council v. Garmon,* 359 U.S. 236, 246–47, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). A long line of cases following *Garmon,* has produced what is known as the "Garmon Rule." This rule "prevents states not only from setting forth standards of conduct inconsistent with the substantive requirements of the [Act], but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Wisconsin Department of Industry v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986). The Garmon Rule was motivated by a desire to eliminate "conflict in its broadest sense" with the "complex and interrelated federal scheme of law, remedy, and administration." *Garmon,* 359 U.S. at 243, 79 S.Ct. at 778. The court recognizes that the Garmon Rule grew from controversies involking the National Labor Relations Act; however, to the extent that the Supreme Court recognizes that the development of common law remedies can have an impact which is conceivably as great as direct state regulation, the court views the principle enunciated in *Garmon* and its progeny as controlling in this case.

■ When section 103(d) of the Safety Act is viewed in light of the Garmon Rule, it becomes apparent that common law tort liability, which has the potential to establish de facto safety standards, represents a source of state regulation which could establish standards inconsistent with congressional mandates. This analysis becomes particularly compelling when one evaluates the amount of attention which Congress has focused on air bag and other occupant restraint issues. Of particular significance is the fact that Congress reserved the power to approve any occupant restraint standards promulgated under the Safety Act. 15 U.S.C. § 1410b(d)(1). Because Congress has manifested an intention to ultimately approve or disapprove any standards involving occupant restraint systems, even though the Act does not speak to standards established by common law tort liability, the court concludes that Congress impliedly preempted the area of

occupant restraint systems, since such standards are, effectively, regulatory instruments. Consequently, the plaintiff's purported cause of action under Georgia law, sounding in strict liability, is preempted to the extent it relies on the use of air bags. For this reason Chrysler's motion for partial summary judgment is GRANTED.

■ The plaintiffs have also filed a motion for leave to amend their complaint to add counts of negligence against Chrysler. The plaintiffs have waited 20 months since notifying Chrysler that they intended to amend their complaint to add negligence claims. While the plaintiffs view the fact that they notified Chrysler of this intention as support for the argument that Chrysler would not be prejudiced by granting leave to amend, the court views it was evincing a dilatory motive with respect to prosecuting this action.

Chrysler points out that additional discovery will have to be conducted and that additional expert examination of the vehicle will be required. While the court recognizes that leave to amend should be freely granted, this precept alone does not entitle the plaintiffs to amend. It is clearly established that a court's discretion in this area is circumscribed by concerns of undue delay, bad faith, dilatory motive, prejudice to other parties, and impact on trial preparation. *Best Canvas Products and Supplies, Inc. v. Ploof Truck Lines, Inc. v. Farrington Texal, Division of Norton Co.*, 713 F.2d 618 (11th Cir.1983).

Because the plaintiffs had ample time and opportunity to amend, because the amendments do not appear to be such that they could not have been added shortly after the complaint was filed, because Chrysler has already moved for partial summary judgment wherein the plaintiffs' new claims, which they seek to add, could have been addressed had they been timely added, and because allowing the plaintiffs leave to amend would complicate trial preparation by requiring additional discovery, the court determines that the plaintiffs' motion for leave to amend to add negligence claims is DENIED.

In summary, Chrysler's motion for partial summary judgment is GRANTED, and the plaintiffs' motion for leave to amend is DENIED.

## ON MOTION FOR RECONSIDERATION

This action, sounding in tort, is before the court on the plaintiffs' motion for reconsideration of this court's November 24, 1987, order. In the November 24 order, this court granted partial summary judgment in favor of the defendant, Chrysler Corporation, holding that the plaintiffs' claim that Chrysler is strictly liable for failing to install passive restraints ("air bags") is impliedly preempted by congressional legislation.

The plaintiffs now seek reconsideration by this court of its position that their cause of action is preempted. In the event, however, that this court declines to reconsider its position, the plaintiffs also seek an amendment to the November 24 order to include a statement prescribed by 28 U.S.C. § 1292(b), allowing the plaintiffs to pursue an interlocutory appeal of this court's order and an accompanying stay of the remaining cause of action.

The thrust of the plaintiffs' motion for reconsideration is that this court committed error by relying on a provision in the National Traffic and Motor Vehicle Safety Act of 1966 which reserved to Congress the power to approve any occupant restraint standards promulgated under the Act. The plaintiffs argue that this was error because the reservation of this power by Congress constituted a legislative veto which was held unconstitutional in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). The plaintiffs characterized the court's reliance on this provision as "substantial" and labeled the court's conclusion that Congress had impliedly preempted claims involving air bags as "overreaching."

The court does not purport to hold that the legislative veto provision of the Act is not unconstitutional, nor need the court even attempt to address this issue in order to hold that the plaintiffs' claim is preempt-

ed. A proper reading of this court's order indicates that the legislative veto provision was but one factor in this court's conclusion that Congress manifested an intention to control this area, and that this area was, therefore, impliedly preempted.

This court's earlier order began by recognizing the tension between section 103(d) and section 108(c) of the National Traffic and Motor Vehicle and Safety Act of 1966, 15 U.S.C. § 1381, *et seq.* The former section, 1392(d), basically prohibits states from establishing any motor vehicle safety standard which is not identical to any federal standard. Section 108(c) of the Safety Act provides that compliance with the safety standard issued under the Act does not exempt a person from liability under common law.

Following that discussion, the court determined that, while the state of Georgia had not enacted any standards in violation of section 1392(d), allowing the plaintiff to maintain a common law tort action premised on the absence of air bags could establish a standard which would contravene the standard enacted under the Safety Act. The court reasoned that since Congress gave manufacturers several options with respect to passenger restraint systems, a common law verdict finding Chrysler negligent for failing to install air bags would effectively establish a standard which would require manufacturers to install air bags, thus, depriving manufacturers of the three options granted by Congress.

After reaching this conclusion, the court noted that under *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and its progeny, common law tort principles can be as repugnant to congressional determinations as actions by state legislatures. Because this court determined, according to *Garmon,* that the plaintiffs' maintenance of this action could create a standard of conduct inconsistent with congressional mandates, the court then concluded that the plaintiffs' air bag claims were impliedly preempted.

To the extent that the plaintiffs' motion for reconsideration turns on a character-

ization of this court's previous order as one relying almost exclusively on an unconstitutional legislative veto provision, the plaintiffs' motion for reconsideration is without merit. To reiterate, this court merely noted that the congressional veto provision simply manifested an intention to control the implementation of occupant restraint systems. This court would have reached the same conclusion without relying on this provision.

The plaintiffs rely primarily upon the savings clause contained in the Safety Act to argue that their common law cause of action is not preempted. In effect, the plaintiffs would have this court believe that the savings clause essentially precludes preemption of their cause of action. The United States Supreme Court in *International Paper Co. v. Ouellette,* —— U.S. ——, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), determined that, where Congress has carefully drawn a comprehensive statute for dealing with a particular subject, the mere inclusion in that legislation of a general savings clause cannot be interpreted to preclude a court from determining that Congress has, nevertheless, impliedly preempted that particular field. —— U.S. at ——, 107 S.Ct. at 812.

As this court noted in its original order, Congress very carefully crafted a statute which provided automobile manufacturers with definite choices with respect to occupant restraint systems. Despite the fact that the provision reserving to Congress the power to disapprove a promulgated standard may be unconstitutional, the remainder of the statute remains in tact, and this court is simply unwilling to allow the plaintiffs, through maintenance of their action, to interfere with the achievement of the purposes and objectives of Congress in enacting the Safety Act.

In addition, since this court issued its order granting Chrysler's motion for partial summary judgment, at least one other federal district court has concluded that air bag claims are impliedly preempted by the Safety Act. *Shick v. Chrysler Corp.,* 675 F.Supp. 1183 (D.S.D.1987). For the foregoing reasons, the plaintiffs' motion for

reconsideration or in the alternative for certification under 28 U.S.C. § 1292(b) to pursue an interlocutory appeal is without merit and is hereby DENIED.