Michael Gardner, Appellant, v Honda Motor Company, Ltd., et al., Respondents, et al., Defendant.

Fourth Department, December 23, 1988

42

## APPEARANCES OF COUNSEL

*Paul William Beltz, P. C. (Russell Quinlan* and *Craig R. Watson* of counsel), for appellant.

*Lester, Schwab, Katz & Dwyer (Eric A. Portuguese, Harold Lee Schwab* and *Steven B. Prystowsky* of counsel), for respondents.

*Lipsig, Sullivan & Liapakis, P. C. (Pamela Anagnos Liapakis, Jay W. Dankner* and *Stephen C. Glasser* of counsel), for New York State Trial Lawyers Association, *amicus curiae.*

*William H. Crabtree, Edward P. Good, Charles H. Lockwood, II, John T. Whatley* and *Mayer, Brown & Platt (Paul M. Bator, Stephen M. Shapiro, Kenneth S. Geller* and *Kathryn A. Oberly* of counsel), for Product Liability Advisory Council, and others, *amici curiae.*

## OPINION OF THE COURT

LAWTON, J.

Plaintiff, 25 years of age, was permanently rendered a quadriplegic when the 1979 Honda Accord he was operating collided with a parked vehicle at 4:48 A.M. on April 23, 1983. It is undisputed that plaintiff had not fastened the seat belt installed in the vehicle. Plaintiff, in this personal injury action brought against the manufacturer and seller of the Honda,

seeks to recover damages under theories of negligence, breach of warranty and strict liability. The plaintiff bases his claims on the alleged uncrashworthiness of the vehicle *(see, Larsen v General Motors Corp.,* 391 F2d 495, 502; *Bolm v Triumph Corp.,* 33 NY2d 151, 158).

Defendants, in conjunction with a motion for a protective order to strike plaintiff's notice for discovery and inspection, moved for an order of partial summary judgment dismissing plaintiff's complaint to the extent it relied upon the absence of passive restraints, such as air bags or automatic seat belts. In opposition, plaintiff submitted an affidavit from an engineer, which alleged that the failure of the vehicle to have included such safety equipment rendered it uncrashworthy and unreasonably dangerous. Plaintiff appeals from so much of Special Term's order that granted partial summary judgment dismissing plaintiff's complaint to the extent that it relies upon claims asserting the absence of an air bag safety device.[1]

The sole issue presented on this appeal is whether the National Traffic and Motor Vehicle Safety Act of 1966 (Safety Act) (15 USC § 1381 *et seq.)* expressly or impliedly preempts plaintiff's claims of negligence with respect to the absence of an air bag. While not a novel issue nationwide, this is the first instance that an appellate court of this State has been called upon to decide this question. Special Term held that there was a preemption under the Federal legislation which barred plaintiff's claims.

Despite the great weight of judicial authority upholding a finding of preemption,[2] plaintiff, aided by an *amicus curiae* brief from the New York State Trial Lawyer's Association,

---

1. Special Term likewise dismissed that part of plaintiff's complaint that alleged another passive restraint, viz., automatic seat belts, as a basis for liability. Plaintiff's notice of appeal, however, excluded by inference that part of the court's order and it is not an issue on this appeal. Not affected by Special Term's order are those allegations of plaintiff's complaint with respect to other alleged design defects, such as defective head and back rests.

2. *See, Baird v General Motors Corp.,* 654 F Supp 28 (ND Ohio 1986); *Bass v General Motors Corp.,* US Dist Ct, WD Tex, Sept. 14, 1987, No. SA-86-CA-279; *Cox v Baltimore County* 646 F Supp 761 (D Md 1986); *Distler v General Motors Corp.,* US Dist Ct, D Minn, Sept. 3, 1987, No. 4-86-821; *Donnelly v General Motors Corp.,* US Dist Ct, D Ore, July 31, 1987, No. 86-576 JU; *Heftel v General Motors Corp.,* US Dist Ct, D DC Feb. 23, 1988, No. 85-1713; *Howard v American Motors Corp.,* US Dist Ct, SD Tex, July 26, 1988, No. 85-1754; *Hughes v Ford Motor Co.,* 677 F Supp 76 (D Conn 1987); *Kelly v General Motors Corp.,* US Dist Ct, WD La, Feb. 18, 1988, No. 87-0828; *Kitts v General Motors Corp.,* US Dist Ct, D NM, Sept. 29, 1987, No.

argues strongly against such a holding. Defendant, in turn, is supported in its position by an *amicus* brief filed by the Product Liability Advisory Council, Inc., the Automobile Importers of America, Inc. and the Motor Vehicle Manufacturer's Association of the United States, Inc. All briefs are exceptionally well written.

The controversy centers upon the wording of the National Safety Act itself. Defendant relies on 15 USC § 1392 (d), which reads: "Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard."

Plaintiff in turn relies upon the savings clause contained in section 1397 (c) of the act, which reads: *"Continuation of common law liability.* Compliance with any Federal motor vehicle safety standard issued under this title does not exempt any person from any liability under common law." Plaintiff argues that the savings clause expressly authorizes common-law liability actions and precludes dismissal based on a find-

CIV 85-0967 JC; *Ritt v General Motors Corp.,* US Dist Ct, ND Ill, Jan. 20, 1988, No. 86 C 1737; *Schick v Chrysler Corp.,* 675 F Supp 1183 (D SD 1987); *Staggs v Chrysler Corp.,* 678 F Supp 270 (ND Ga 1987); *Surles v Ford Motor Co.,* US Dist Ct, ND Tex, May 10, 1988, No. CA4-87-270-K; *Vanover v Ford Motor Co.,* 632 F Supp 1095 (ED Mo 1986); *Vasquez v Ford Motor Co.,* US Dist Ct, D Ariz, Feb. 19, 1987, No. CIV 86-0657; *Wattelet v Toyota Motor Corp.,* 676 F Supp 1039 (D Mont 1987); *Aronowitz v General Motors Corp.,* NY Sup Ct, Jan. 28, 1988, No. 14037-84; *Garman v Mazda Motor Corp.,* Tex Dist Ct, April 6, 1988, No. 85-13829-F; *Gingold v Audi-NSU-Auto Union Ag.,* Pa Ct C P, May 12, 1988, No. 6155; *Groves v Chrysler Corp.,* Ore Cir Ct, Mar. 15, 1988, No. 84-7-302; *Little v Chrysler Corp.,* Ore Cir Ct, Mar. 15, 1988, No. 84-11-103; *Mackey v American Honda Motor Co.,* Ohio Ct C P, Dec. 22, 1986, No. 83 CV-08-4508; *McLaughlin v General Motors Corp.,* Va Cir Ct, May 16, 1988, No. LK-27-2; *Martinez v Ford Motor Co.,* Fla Cir Ct, Aug. 15, 1988, No. 87-893; *Parker v Evans,* Cal Super Ct, June 10, 1988, No. OCV-36391; *Pederson v Ford Motor Co.,* Alaska Super Ct, Sept. 24, 1987, No. 3AN-85-15565; *Phillips v Namie,* Fla Cir Ct, Sept. 22, 1986, No. 85-33951-CA07; *Puzio v General Motors Corp.,* — NJ Super — (Mar. 27, 1987, No. L-072325-85); *Schwartz v Volvo, N. Am. Corp.,* Ala Cir Ct, Mar. 10, 1988, No. CV86-7701; *Soboscienski v Ford Motor Co.,* Alaska Super Ct, Oct. 28, 1986, No. 2NO-85-246; *Sutton v Allenberg,* Idaho Dist Ct, Feb. 25, 1988, No. 6551; *Wickstrom v Maplewood Toyota,* 416 NW2d 838 (Minn Ct App, 1987), *cert denied* — US —, 108 S Ct 2905 (June 30, 1988); *Wolfe v General Motors Corp.,* Ohio Ct C P 1988, No. CV-87-20704.

ing of Federal preemption *(see, Garrett v Ford Motor Co.,* 684 F Supp 407; *Baird v General Motors Corp.,* 654 F Supp 28; *Murphy v Nissan Motor Corp.,* 650 F Supp 922). Defendant responds that the savings clause applies only to those areas of automotive safety equipment not specifically dealt with under the act *(see, Staggs v Chrysler Corp.,* 678 F Supp 270; *Schick v Chrysler Corp.,* 675 F Supp 1183). On this appeal we are concerned only with the installation of air bags and there can be little question but that this issue has been dealt with extensively at the Federal level by the United States Congress, the Department of Transportation (DOT) and the National Highway Traffic Safety Administration (NHTSA).

The Safety Act was enacted by Congress in 1966. "[T]he Act was necessary because the [automobile] industry was not sufficiently responsive to safety concerns" *(Motor Vehicle Mfrs. Assn. v State Farm Mut.,* 463 US 29, 49 [1983]). Congress determined that given the "centralized, mass production, high volume character of the motor vehicle manufacturing industry in the United States," the country needed motor vehicle safety standards that were "strong and adequately enforced," and "uniform throughout the country." (S Rep No. 1301, 89th Cong, 2d Sess, reprinted in 1966 US Code Cong & Admin News 2709, 2720.) It concluded that "the primary responsibility for regulating the national automotive manufacturing industry must fall squarely upon the Federal Government." (S Rep No. 1301, 89th Cong, 2d Sess, reprinted in 1966 US Code Cong & Admin News 2709, 2712.) Congress relegated the States to "a consultative role in the setting of standards" *(ibid.).* The Safety Act directed DOT and the NHTSA to issue Federal motor vehicle safety standards that are "practicable", "meet the need for motor vehicle safety," and apply uniformly throughout the country (15 USC § 1392 [a]).

In 1967 NHTSA issued Standard 208, which required the installation of seat belts in all automobiles (32 Fed Reg 2415). Subsequent amendments broadened Standard 208 to authorize additional passive protection, such as air bags or automatic seat belts. In 1972, Standard 208 was further revised to require vehicles manufactured between August 1973 and August 1975 to use either passive restraints or lap and shoulder three-point seat belts with an ignition interlock system (37 Fed Reg 3911). Since Congress mandated the seat belt option, it has reserved to itself, however, the power to decide by congressional veto whether air bags would ever be required (15 USC § 1410b). Congress prohibited the implementation of a

national air bag requirement in 1979 and 1980 (Pub L 95-335, 96-131). Repeated attempts have been made on behalf of consumers to compel the Federal Government to require automobile manufacturers to install air bags, but to date such efforts have not been successful *(see, Motor Vehicle Mfrs. Assn. v State Farm Mut.,* 463 US 29, *supra; State Farm Mut. Auto. Ins. Co. v Dole,* 802 F2d 474, *cert denied sub nom. New York v Dole,* 480 US 951; *Public Citizen v Steed,* 851 F2d 444). As late as 1984, Secretary of Transportation Elizabeth Dole observed "that air bags would not save any more lives than the belt system" (49 Fed Reg 28985 [1984]) and that air bags were "unlikely to be as cost effective" (49 Fed Reg 29001 [1984]). In addition, based on extensive hearings and tests, Secretary Dole concluded that air bags may not be accepted by the public and that their use might even be injurious to children and out-of-place occupants (49 Fed Reg 28992). The Federal Government in an *amicus* brief filed with the court in the case of *Riechart v Ford* (— F2d — [10th Cir, No. 88-1900]) took a strong position against the mandatory employment of air bags.

■ Where so much study has been given to a particular question and the Congress and the executive branch both have concluded that a mandatory requirement for air bag installation would not be any more beneficial than the three-point safety belt currently required, and may even be detrimental, courts should be reluctant to permit a contrary result. Where Congress, by its acts, has precluded any State from enacting a law compelling their installation, one must conclude that Congress intended to preempt the law in this area. Where the individual States are precluded from enacting a law requiring automobiles to be equipped with air bags, and where NHTSA, the very agency charged with regulating vehicle safety, cannot promulgate such a rule without the indirect consent of both Houses of Congress, it makes little sense to permit a jury of six in any one case to find that the failure to do just that is evidence of negligence *(see, Palmer v Liggett Group,* 825 F2d 620, 628). To do so is to permit indirectly that which cannot be done directly *(International Paper Co. v Ouellette,* 479 US 481).

These facts distinguish this case from the line of cases that hold that the mere setting of minimum standards by the Federal Government does not preclude actions brought under the common law of the different States *(see, Shipp v General Motors Corp.,* 750 F2d 418; *Sours v General Motors Corp.,* 717 F2d 1511; *Chrysler Corp. v Tofany,* 419 F2d 499). In most of

those instances, the States are permitted to enact stricter safety requirements than those enacted by the Federal Government. Neither the individual States nor NHTSA itself is free to do so. How then can it be said that Congress intended to permit a different rule to apply in an action brought under the common law? To do so would require the States to abstain from acting for the benefit and safety of its citizens, but leave the determination of whether vehicle manufacturers should be required to install air bags to the people themselves, who are the least equipped to make such a determination. Stated another way, it is illogical to give to a single jury the "regulatory power explicitly denied to all fifty states' legislative bodies" *(Palmer v Liggett Group,* 825 F2d 620, 628, *supra).* Such a result is directly contrary to that which Congress intended.

Plaintiff's argument that a jury's finding of negligence in this regard is not regulatory in nature because it does not require manufacturers to install air bags is specious. Under principles of res judicata and today's rulings with respect to collateral estoppel, it would be a short time before all manufacturers would be required to recall all vehicles not so equipped and to install air bags in all new models in order to avoid the risk of liability *(Wattelet v Toyota Motor Corp.,* 676 F Supp 1039; *Vanover v Ford Motor Co.,* 632 F Supp 1095). The economic fallout of such a ruling is staggering.

█ Plaintiff, in this one-car accident, was very seriously injured and one can only feel compassion for him, but it must be pointed out that had plaintiff used the Federally mandated three-point seat belt installed in the car he was driving, he would have been afforded much the same protection that an air bag would provide (49 Fed Reg 28962, 28986). This court has held that a manufacturer's "failure to provide a guard was not a proximate cause of plaintiff's injuries because at the time of the accident he was not using an available guard installed by his employer." *(Magee v Bliss Co.,* 120 AD2d 926, 927.) The facts of this case are no different. The fact that the law did not require plaintiff to wear his seat belt at the time of the accident is of no moment.[3] A jury is required to discount from its award any damages for injuries plaintiff would not have incurred had the seat belt been worn *(see, Spier v Barker,* 35 NY2d 444). In this action brought for the

---

3. Section 1229-c (3) of the Vehicle and Traffic Law, requiring an operator of a motor vehicle to use a seat belt, became effective January 1, 1985.

uncrashworthiness of the vehicle, those are the very damages being sought.

For all these reasons, the order of Special Term should be affirmed.

DOERR, J. P., BOOMER, PINE and DAVIS, JJ., concur.

Order unanimously affirmed, without costs.